IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NENA CHRISTINE LOPEZ,

        Plaintiff,

v.                                                CIV 16-0638 KBM

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

        Defendant.


## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse and Remand for Rehearing with Supporting Memorandum (*Doc. 23*), filed January 11, 2017. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *Doc. 9.* Having reviewed the parties' submissions, the relevant law, and the relevant portions of the Administrative Record, the Court will deny the Motion.

### I.    Introduction

Plaintiff, who elected to appear at her administrative hearing without counsel, contends that the Administrative Law Judge ("ALJ") who held that hearing failed to fully inquire into the effects of her headaches and obesity, resulting in his failure to consider them in concluding that she is not disabled. After careful review of the record, however,

---

[1] Effective January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is therefore substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

the Court is confident that the ALJ considered these impairments. Even assuming he did not, the Court finds any such error to be harmless, as Plaintiff has failed to demonstrate any further limiting effects these impairments may impose beyond those recognized by the ALJ.

## II. Procedural History

Plaintiff filed applications with the Social Security Administration for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act on August 3 and 31, 2010. *AR* at 171-78.[2] In these applications, Plaintiff alleged two different disability onset dates: August 1, 2008, and August 3, 2010. *AR* at 171, 175. Regardless, Plaintiff stopped working full-time on August 3, 2010, due to osteoarthritis in her knees, migraines, obesity, high blood pressure, and thyroid problems. *AR* at 205. Prior to claiming disability, Plaintiff worked as a receptionist at a doctor's office, janitor at a school, and cashier at a gas station. *AR* at 72-73, 206. Plaintiff testified that she can no longer work as a cashier because of the standing and lifting requirements of that job. *AR* at 72-73. However, Plaintiff continues to work part-time as an assistant librarian. *AR* at 66.

The agency denied Plaintiff's claims initially and upon reconsideration, and she requested a *de novo* hearing before an administrative law judge. *AR* at 87-116. ALJ Barry O'Melinn held an evidentiary hearing on March 12, 2014, at which Plaintiff appeared via video teleconference. *AR* at 61. Although ALJ O'Melinn advised her of her right to be represented by counsel, Plaintiff elected to proceed on her own. *AR* at 62-63.

---

[2] Documents 16-1 through 16-18 comprise the sealed Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

Ultimately, the ALJ issued an unfavorable decision on August 29, 2014. *AR* at 41-53. Plaintiff, now represented by counsel, submitted a Request for Review of the ALJ's Decision to the Appeals Council, which the Council declined on April 22, 2016. *AR* at 1-7, 36-37. As such, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court now has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A claimant seeking disability benefits must establish that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[3]

At Step One of the sequential evaluation process, the ALJ found that while Plaintiff continues to work part-time as an assistant librarian, she has not engaged in

---

[3] The Tenth Circuit recently summarized these steps in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016):

> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulation.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's impairment prevents him from performing his past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the RFC to "perform other work in the national economy." *Id.*

substantial gainful activity during the relevant time period. *AR* at 43. At Step Two, he determined that Plaintiff has the severe impairments of "bilateral knee disorder, morbid obesity, hypertension, hypothyroidism, back/hip pain, diabetes mellitus type 2, bipolar panic, and post-traumatic stress disorder ('PTSD')." *AR* at 43. At Step Three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the regulatory "listings." *AR* at 43-44.

When a plaintiff does not meet a listed impairment, the ALJ must determine her residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(a)(4). RFC is a multidimensional description of the work-related abilities a plaintiff retains in spite of her medical impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most.*" SSR 96-8P, 1996 WL 374184, at *1. In this case the ALJ determined that Plaintiff retained the RFC to

> perform sedentary work activity, as defined in 20 CFR 404.1567(a) and 416.967(a), except that she could balance, stoop, kneel, crouch, crawl, and climb ramps/stairs only occasionally. She would need to avoid concentrated exposure to moving machinery, hazardous machinery, and unprotected heights. She could understand, carry out, and remember detailed but not complex instructions and make commensurate work-related decisions, responding appropriately to supervision, coworkers, and work situations, deal with routine changes in work setting, maintain concentration, persistence, and pace for up to and including two hours at a time with normal breaks throughout the workday.

*AR* at 44-45. Employing this RFC at Step Four, the ALJ determined that Plaintiff is able to return to her past relevant work as a receptionist. *AR* at 53. Accordingly, the ALJ did not proceed to Step Five, having determined that Plaintiff was not disabled from her alleged onset date through the date of his decision, and he denied benefits. *AR* at 47.

### III.    Legal Standard

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). "In order to determine whether the [Commissioner's] decision is supported by substantial evidence, [this Court] must meticulously examine the record." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, this Court "cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016) (citation omitted).

### I.    Analysis

Plaintiff argues that the ALJ committed reversible error by failing to fully explore the facts regarding her headaches, migraines and obesity during the administrative hearing. *Doc. 23* at 4 (citing *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)). Plaintiff quotes *Musgrave* for the proposition that a social security disability hearing is nonadversarial, imparting upon an ALJ the duty to "inform himself about the facts relevant to his decision and to learn the claimant's own version of the facts." *Doc. 23* at 4. The *Musgrave* Court went on to note that this duty "to develop the record is heightened when a claimant is unrepresented." *Musgrave*, 966 F.2d at 1374.

However, permitting an unrepresented claimant to proceed before an ALJ is not improper. To the contrary, an ALJ will still meet his duty of inquiry in an unrepresented case if he asks "sufficient questions to ascertain (1) the nature of a claimant's alleged

impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities." *Id.* (citation omitted). That said, "[t]he ALJ does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997). "The standard is one of reasonable good judgment. The duty to develop the record is limited to 'fully and fairly develop[ing] the record as to material issues.'" *Id.* (quoting *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993)).

Plaintiff posits that ALJ O'Melinn failed to adequately question her about the impact of her migraines, headaches and obesity. She contends that this alleged error led to the ALJ's subsequent failure to discuss and consider her migraines and headaches in his Step Two analysis and Step Four findings, and to his failure "to discuss and assess the effect of [Plaintiff's] obesity on the RFC." *See Doc. 23* at 7-9. For the reasons that follow, the Court finds no error in the ALJ's analysis, and so affirms his decision as supported by substantial evidence.

First, notwithstanding the questions that Plaintiff argues the ALJ "could have" asked her, the Court finds that ALJ O'Melinn complied with *Musgrave* because his questions were broadly directed at ascertaining (1) the nature of Plaintiff's impairments, (2) Plaintiff's ongoing treatment, and (3) the impact Plaintiff's impairments have on her ability to work. This much is clear from a close review of the hearing transcript.

After thoroughly explaining the administrative process to her, the ALJ questioned Plaintiff about where she lives, her children, her ability to drive and her current work. *AR* at 63-68. The ALJ asked Plaintiff if her medical conditions ever require her to miss work,

to which she responded that she was out of work for a month with pleurisy and issues with her lungs, and she will miss if her "migraine's too bad. But usually I just deal with it and go to work." *AR* at 68. The ALJ also reviewed Plaintiff's medical providers and identified records that were missing from Plaintiff's file. *AR* at 69-70, 75. The ALJ asked Plaintiff about the time she missed from work, her past work, her knee problems and her back problems. *AR* at 73-76. The ALJ also asked Plaintiff about "any other problems" that affect her ability to work, to which she responded "[t]he pain just, I have the knees, my back, I get migraines. It's hard to concentrate with them." *AR* at 76. The ALJ then questioned the Vocational Expert. *AR* at 77-84. Finally, Plaintiff described her typical day and the restrictions on her abilities due to her impairments. *AR* at 84-85.

While the ALJ did not *specifically* question Plaintiff about her migraines, headaches and obesity, she was provided with ample opportunity to discuss the effects those impairments have on her ability to work. When given this opportunity, Plaintiff failed to mention any difficulty related to her headaches or obesity with regard to her current work as an assistant librarian. *AR* at 67. True, Plaintiff testified that she might occasionally miss work if her migraine is too bad, but she also testified that she usually just deals with the symptoms and is able to work. *AR* at 68. Additionally, Plaintiff explained her difficulty with lifting and standing when asked if she could return to her work as a gas station cashier. *AR* at 73. Besides her knees and back, Plaintiff mentioned no other functional limitations caused by her obesity. The Court accordingly refuses to reverse the ALJ for failing to further explore these conditions at the hearing.

Moreover, this Court's meticulous review of the record shows the ALJ's Step Two and Four analyses to be sufficiently supported, notwithstanding his failure to further inquire into the effects of those impairments.

### A) *Migraines and Headaches*

As noted above, Plaintiff's initial application for benefits asserted that she became disabled due to, among other things, migraines. *AR* at 205. Plaintiff subsequently completed a Headache Questionnaire on September 27, 2010. *AR* at 212. On the Questionnaire, Plaintiff reported that she has daily headaches and migraines a few times a month. *AR* at 212. Plaintiff's headaches are brought on by "bright light, peanuts, loud noises, [and] scretchy (sic) noises." *AR* at 212. Plaintiff self-medicates with Tylenol, and was treated once with a shot. *AR* at 212. Ice, darkness, quiet, and sleep help. *AR* at 212. According to Plaintiff, when she has a headache she "can't function" because it is "hard to sit up the pressure is overwhelming." *AR* at 212. Plaintiff's headaches last "hours occasionally a couple of days." *AR* at 212.

Plaintiff also completed a Function Report on September 30, 2010. *AR* at 213-20. On the Report, Plaintiff stated that sometimes it is hard to fall asleep, "especially with headaches." *AR* at 214. She also reported difficulties completing house and yard work if she has a migraine. *AR* at 215. Plaintiff will not go outside if she has a migraine. *AR* at 217. Plaintiff's medication list indicates that she takes Excedrin Migraine for migraines and notes "i dont like going to the hospital for shots so i take what i can for my migraines." *AR* at 242. She also reaffirmed that she regularly treats her headaches with Tylenol. *AR* at 242.

Despite these reports and Plaintiff's testimony, nowhere in the ALJ's decision is the word "migraine" mentioned, and the word "headache" only appears three times in the course of the ALJ's review of Plaintiff's medical records. *See AR* at 41-53. Plaintiff contends that the ALJ's "failure to question [her] about her headaches led to his failure to discuss and consider headaches in his step two analysis and in his step four findings." *Doc. 23* at 7. However, the ALJ's failure to consider Plaintiff's migraines or headaches at Step Two is harmless, and a close review of the record shows why the ALJ chose not to discuss them during his RFC findings.

The Tenth Circuit has recognized that any error by an ALJ at Step Two becomes harmless if the ALJ reaches the proper conclusion that the claimant cannot be denied benefits conclusively at Step Two and proceeds to the next step of the evaluation sequence. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008); *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (unpublished) ("an error at step two of the sequential evaluation concerning one impairment is usually harmless when the ALJ, as occurred here, finds another impairment is severe and proceeds to the remaining steps of the evaluation"). Accordingly, even if the ALJ erred by failing to consider her migraines and headaches at Step Two, the Court finds any such error to be harmless because the ALJ proceeded beyond that step and ultimately denied benefits at Step Four.

Of course, the question remains whether the ALJ's Step Four findings were adequately supported. As noted above, before proceeding to Step Four, the ALJ was required to formulate Plaintiff's RFC. "An ALJ's RFC determination – which the ALJ then uses at steps four and five of the sequential evaluation – must consider both severe and

non-severe medically determinable impairments." *Grotendorst*, 370 F. App'x at 883 (citing 20 C.F.R. § 404.1545(e)). Thus, even if the ALJ permissibly concluded that Plaintiff's migraines and headaches are not severe at Step Two, he was still required to consider them when formulating her RFC, if warranted by the record.

Before proceeding to the record, however, the Court takes note of the deference that the Tenth Circuit has afforded to ALJs when it comes to discussing a claimant's medical problems. *See, e.g. Bales v. Colvin*, 576 F. App'x 792 (10th Cir. 2014) (unpublished). In *Bales*, the claimant contended that the ALJ "failed to consider that she suffers from carpal tunnel syndrome, migraines, fatigue, insomnia, high cholesterol, gastroesophageal reflux disease, and left-shoulder-impingement syndrome." *Id.* at 799. Unpersuaded, the Tenth Circuit pointed out that the ALJ

> noted that, when assessing a claimant's RFC, 'all of the claimant's impairments, including impairments that are not severe' must be considered. . . . Further, the ALJ stated that she had 'considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' . . . and that she had 'carefully considered all of the evidence' in finding Ms. Bales not disabled.

*Id.* The Tenth Circuit then recognized that an ALJ is not required to discuss every piece of evidence and that a reviewing court should take him at his word if he says he has considered all of the evidence. *Id.* (quoting *Mays*, 739 F.3d at 576; *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009)). Accordingly, the court concluded that "[h]ere, the ALJ thoroughly discussed the medical evidence, and there is no indication that, *despite not expressly mentioning* Ms. Bales' other medical problems, the ALJ did not take them into account." *Id.* (emphasis added). Moreover, the court pointed out that "even if the ALJ failed to account for all of Ms. Bales' medical problems, Ms. Bales does not identify how

any of these conditions, either individually or in combination, affected her functioning during the time she was disabled. . . . In that case, any error would be harmless." *Id.* (citations omitted).

This Court reaches a similar result in this case. ALJ O'Melinn made the same boilerplate statements that the *Bales* court found sufficient to comply with his duty to review all of the evidence and account for all of Plaintiff's conditions. *See AR* at 41-42, 44-45. The Court accordingly takes the ALJ at his word when he says he "considered *all* [of Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *AR* at 45 (emphasis added). Even if the Court were not inclined to take the ALJ at his word, the ALJ's List of Exhibits contains Plaintiff's headache questionnaire and all of the records she insists the ALJ ignored in making his RFC finding. *See AR* at 54-58. Thus, the Court is confident that the ALJ considered Plaintiff's migraines and headaches when determining that she is not disabled.

Moreover, as in *Bales*, Plaintiff has failed to identify how her migraines or headaches preclude her ability to work. This renders the ALJ's failure to explicitly discuss them harmless. True, Plaintiff testified that her migraines make it "hard to concentrate" and indicated that she might miss work if her migraine is too bad, but she also testified that she "usually just deal[s] with it and go[es] to work." *AR* at 68, 76. The ALJ could have correctly concluded that Plaintiff's migraines and headaches accordingly had no significant effect on her RFC. As it must, the Court has meticulously examined the record, and concludes that such a finding would be supported by substantial evidence.

As Plaintiff's brief recognizes, she only complained of migraines to her medical providers on two occasions, and the Court notes that on both of those occasions, migraines were not Plaintiff's chief complaint. On June 16, 2009, Plaintiff presented to Gilbert Aragon, D.O., with a complaint of continued bilateral knee pain and "also" a migraine headache. *AR* at 283. Dr. Aragon assessed Plaintiff with a migraine headache and bilateral degenerative osteoarthritis in both knees. *AR* at 283. Her migraine was treated with a Toradol injection. *AR* at 283.

Four years later, on November 27, 2013, Plaintiff presented to Lisa Wentling, P.A., with complaints of nasal congestion, sneezing, sinus pressure, cough, and intermittent sore throat that had lasted a couple of weeks and which was not responding to over the counter cold medication. *AR* at 366. She also complained of "a current severe migraine headache." *AR* at 366. Plaintiff was assessed with an "Upper Respiratory Infection, Allergic rhinitis, Migraine headache, and Hypertension." *AR* at 366. Her headache was again treated with a Toradol injection. *AR* at 366. On December 3, 2013, Plaintiff followed up with Ms. Wentling, continuing to complain of congestion, cough, chest pain, and hypertension. *AR* at 366. She was assessed with "Radicular chest pain with exertion, Pleurisy, Uncontrolled hypertension, and Headache." *AR* at 366. On December 6, 2013, Plaintiff presented to Ms. Wentling to follow up on her uncontrolled hypertension, headache, and radicular chest pain with exertion. *AR* at 365. Her headache was noted to be improved. *AR* at 365. Plaintiff returned to Ms. Wentling on December 20, 2013, for a follow-up. *AR* at 364. She reported that her headache had improved since her blood pressure went down. *AR* at 364. However, she continued to experience bronchospasms. *AR* at 364. She was assessed with hypertension and

cough-variant asthma, uncontrolled. *AR* at 364. By her December 30, 2013, follow-up, Plaintiff was no longer complaining of a headache. *AR* at 364. Nor did she mention a headache during a follow-up visit on February 4, 2014. *AR* at 363.

Plaintiff identifies no records other than these in support of her contention that migraines or headaches affect her ability to work, *see Doc. 23* at 6-7, and the Court has found none. While the Court is sympathetic to Plaintiff's plight in dealing with her migraines and headaches as described in her function reports, as the Tenth Circuit has said, "[d]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to *preclude* any substantial gainful employment." *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988) (quoted authority omitted) (emphasis added). Simply put, Plaintiff has failed to demonstrate that any symptoms she experience from her migraines or headaches are severe enough to prevent her from working, and has accordingly failed to demonstrate any harmful error from the ALJ's failure to explicitly discuss these impairments in his RFC analysis.

### B) *Obesity*

The Court reaches a similar result with regard to Plaintiff's obesity. "Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems. It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems." SSR 02-01p, 2002 WL 34686281, at *3. For this reason, "Social Security Ruling (SSR) 02-1p requires an ALJ to consider the effects of obesity when assessing RFC, including the fact that 'the combined effects of obesity with other impairments can be greater than the effects of

each of the impairments considered separately.'" *DeWitt v. Astrue*, 381 F. App'x 782, 785 (10th Cir. 2010) (quoting SSR 02-1p at *1). However, "an ALJ may 'not make assumptions about the severity or functional effects of obesity combined with other impairments' but rather, must 'evaluate each case based on the information in the case record.'" *Id.*

Plaintiff's argument concerning her obesity is simple – she wanted "the ALJ to explain what functional restrictions are caused by the obesity impairment," *Doc. 28* at 2, as she claims is required by the Tenth Circuit's unpublished decision in *DeWitt*. *Doc. 23* at 8. Unfortunately for Plaintiff, *DeWitt* and subsequent case law support the ALJ's findings in this case.

In *DeWitt*, as here, the ALJ found obesity to be a severe impairment at Step Two. *Id.* at 784. Although the *DeWitt* ALJ ultimately limited the claimant to sedentary work with additional restrictions, the Tenth Circuit reasoned:

> there [was] nothing in the [ALJ's] decision indicating how or whether [the claimant's] obesity influenced the ALJ in setting those restrictions. Rather, it appear[ed] that the ALJ's RFC assessment was based on "assumptions about the severity or functional effects of [DeWitt's] obesity combined with [her] other impairments" – a process forbidden by SSR 02-1p.

*Id.* at 785. Accordingly, the Tenth Circuit remanded for proper consideration of the claimant's obesity in relation to her other impairments and her RFC. *Id.*

*Dewitt* is distinguishable. There, the ALJ gave "considerable weight" to a physician's testimony (Dr. Brahms) when formulating the claimant's RFC. *Id.* at 785. "But in doing so, the ALJ mistakenly believed that Dr. Brahms had identified obesity as one of DeWitt's medical conditions. In fact, Dr. Brahms offered no opinion about the functional effects of DeWitt's obesity . . . [h]e simply never mentioned obesity." *Id.* Thus,

the Tenth Circuit concluded that the ALJ could not rely on Dr. Brahms' testimony to "satisfy the duty to consider the effects of DeWitt's obesity on her other severe impairments." *Id.*

ALJ O'Melinn did not make the same error. Rather than relying on one medical provider, the ALJ discussed all of Plaintiff's medical records, pointing out in multiple instances her providers' concern with her weight and Plaintiff's attempts at weight loss. *See AR* at 45-51. ALJ O'Melinn then set forth the standard for considering Plaintiff's obesity, and concluded: "[i]n the instant matter, claimant's obesity does not indicate any limits when standing alone. However, when taken in combination with the other impairments, it counsels in favor of the postural and exertional limits indicated herein." *AR* at 51. Although Plaintiff argues that this statement and the ALJ's analysis in general were insufficient, post-*DeWitt* case law shows this to be untrue, as further explained below. Moreover, Plaintiff does not identify any further limitations her obesity causes that would preclude her from performing sedentary work. This omission proves fatal to her claim of error.

For example, in *Arles v. Astrue*, 438 F. App'x 735, 740 (10th Cir. 2011) (unpublished), the claimant argued that the ALJ "failed to include his obesity in the RFC determination." *Id.* While the Tenth Circuit found that "[t]he ALJ could have provided a more particularized discussion of the effects of Mr. Arles's obesity," it ultimately deferred to the ALJ's assertion that the claimant's obesity had been evaluated under the criteria set forth in SSR 02-1p. *Id.* In addition to the deference it afforded to the ALJ, the Tenth Circuit placed the burden on the claimant to show how his obesity further restricted his

RFC. *Id.* ("Moreover, Mr. Arles does not discuss or cite to any evidence showing that obesity further limited his ability to perform a restricted range of sedentary work.").

Next, in *Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 798 (10th Cir. 2013) (unpublished), the claimant "claim[ed] error by the ALJ in finding Ms. Sim's obesity to be a severe impairment at step two but not including it in his RFC at step five." *Id.* The Tenth Circuit rejected this argument because "there [was] no record indication of any functional limitations from Ms. Sim's obesity or of any impairments possibly caused or exacerbated by her obesity that are inconsistent with the RFC" the ALJ assigned. *Id.*

Then, in *Smith v. Colvin*, 625 F. App'x 896, 899 (10th Cir. 2015) (unpublished), the claimant argued, as claimant does here, that "other than noting her obesity was a severe impairment, the ALJ never analyzed or discussed her obesity, including in his RFC analysis." *Id.* The Tenth Circuit disagreed. Emphasizing that an ALJ cannot assume a functional deficit, the court addressed the claimant's argument thusly:

> We take this to mean that for each piece of evidence the ALJ discussed in formulating her RFC (and there were several), he was also required to note the absence of any evidence that her obesity resulted in additional functional limitations or exacerbated any other impairment. We decline to impose such a requirement on the ALJ.

*Id.* The Tenth Circuit then again placed the burden on the claimant to show that her obesity resulted in further limitations than the ALJ assigned in her RFC: "Ms. Smith has not shown that her obesity alone, or in combination with other impairments, resulted in any further limitations." *Id.*

Finally, in *Rose v. Colvin*, 634 F. App'x 632 (10th Cir. 2015) (unpublished), the claimant argued, as claimant does here, that "although the ALJ found her obesity to be a severe impairment, he failed to properly consider its effects in formulating her RFC."

*Id.* at 637. The Tenth Circuit acknowledged that "[t]he ALJ did not specifically mention obesity in the RFC determination," but, instead, "included specific limitations and restrictions for stooping, kneeling, and crouching." *Id.* The court then placed the onus on the claimant to show how the medical evidence supported further functional limitations. *Id.* Noting that the claimant cited no such evidence, the Court held that "the factual record does not support Ms. Rose's position that her obesity, either alone or in combination with other conditions, precludes her from performing a limited range of sedentary work." *Id.* (quoting *Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004)).

The Court reaches the same result in this case. Here, the ALJ complied with SSR 02-01p by discussing Plaintiff's obesity-related medical impairments and concluding that those impairments combined restrict her to sedentary work with additional restrictions on her ability to balance, stoop, kneel, crouch, crawl, and climb. *AR* at 44. Plaintiff has failed to demonstrate that her obesity causes any further functional limitation that is inconsistent with the limited range of sedentary work for which the ALJ found her to be capable of performing.

**V.    Conclusion**

Plaintiff has failed to demonstrate that the ALJ committed harmful, reversible, error in this case.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse and Remand for Rehearing with Supporting Memorandum (*Doc. 23*) is **denied**.

**IT IS FURTHER ORDERED** that a Final Order pursuant to Rule 58 of the Federal

Rules of Civil Procedure be entered affirming the decision of the Acting Commissioner

and dismissing this action with prejudice.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent